**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| James Bruce Hearne, II, )<br>)<br>          Plaintiff, )<br>)<br>v. )<br>)<br>Berkeley County, )<br>Berkeley County Sheriff's Office, )<br>Scott W. Lockwood, )<br>Bernard W. Nelson, Jr., Hershul Tanner, )<br>and Defendant Does 1-5 inclusive, )<br>)<br>          Defendants. )<br>) | Case No. 2:25-cv-03397-BHH-MGB<br><br>**REPORT AND RECOMMENDATION** |

This is a civil action filed by Plaintiff James Bruce Hearne, II ("Plaintiff"), through counsel, alleging causes of action under 42 U.S.C. § 1983. (Dkt. No. 1.) Before the Court is Defendants' Motion to Dismiss. (Dkt. No. 6.) All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. For the reasons set forth below, the undersigned recommends Defendants' motion be granted.

**BACKGROUND**

    **A.**    **General Background**

This civil action, filed April 23, 2025, arises out of Plaintiff's arrest on May 17, 2019, "by agents with the Berkeley County Sheriff's Office Drug Enforcement Unit/Narcotics Task Force following a traffic stop after [Plaintiff was] leaving a BP gas station in the Town of Summerville, Berkeley County." (Dkt. No. 1 at 4.) During this traffic stop, 580 grams of methamphetamine was found in Plaintiff's car. (*Id*.) "Plaintiff was subsequently served with outstanding drug distribution warrants as well as a warrant for Trafficking in Methamphetamine." (*Id*.) Plaintiff alleges that

1

Defendants Scott W. Lockwood, Bernard W. Nelson, Jr., and Hershul Tanner were all Detectives with the Berkeley County Sheriff's Office ("BCSO") Drug Enforcement Unit/Narcotics Task Force at the time of his arrest. (*Id.* at 2–3.) He alleges these Defendants "were acting individually as employees at Berkeley County and BCSO and pursuant to their duties as sworn law enforcement officers" at "all times relevant hereto." (*Id.* at 8.) According to Plaintiff, Defendants Lockwood and Tanner submitted an Incident Report indicating "that the encounter with the Plaintiff was a random chance sighting of a person with outstanding warrants which resulted in a search of his vehicle and discovery of 580 grams of methamphetamine." (*Id.* at 4.) Defendants Nelson and Tanner testified at the preliminary hearing on Plaintiff's criminal charges on January 31, 2020. (*Id.*) Both the Incident Report and preliminary hearing testimony omitted "that a confidential informant working with the Berkeley County Sheriff's Office Drug Enforcement Unit provided information that the Plaintiff would have drugs at the BP gas station on May 17, 2019." (*Id*. at 4–5.)

Plaintiff alleges he "asserted from the beginning of his criminal case that he was set up by an individual who he now knows was the alleged confidential informant." (*Id*. at 5.) According to Plaintiff, his "criminal defense attorney repeatedly told the Assistant Solicitor assigned to that case of this belief that an informant had set up Plaintiff, who believed that this person was in fact acting with the police to set him up." (*Id*.) "The Assistant Solicitor told defense counsel that no informant was working with the police on this case." (*Id*.)

On May 20, 2021, Plaintiff pled guilty to Trafficking in Methamphetamine and two counts of Possession with Intent to Distribute Heroin. (*Id.*) Plaintiff was sentenced to a ten-year active sentence to be served in the South Carolina Department of Corrections, with 734 days credit for time served in jail. (*Id*.) On August 18, 2021, the Assistant Solicitor contacted Plaintiff's defense

2

counsel "and provided additional discoverable evidence about Plaintiff's case, informing Plaintiff's attorney that BCBSO's Drug Enforcement Unit had in fact been working with a confidential informant in the May 17, 2019 arrest of Plaintiff." (*Id.*) On February 23, 2022, Plaintiff moved to withdraw his guilty plea and vacate his conviction for Trafficking in Methamphetamine. (*Id.* at 6.) On December 13, 2022, a consent order was filed between the State and Plaintiff withdrawing the plea and a status change form was filed on December 21, 2022 disposing of the case as *nolle prosequi*. (*Id.*) Plaintiff remained imprisoned on the two other charges, and he was released early on or about April 2, 2023. (*Id.*)

Plaintiff alleges that "Defendants intentionally failed to disclose material and exculpatory evidence in Plaintiff's underlying case, and in doing so failed to comply with" their disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff alleges that "Defendants' *Brady* violation . . . denied Plaintiff his constitutional rights to due process, causing him damages." (*Id.* at 7.) Plaintiff further alleges that "Defendants instituted judicial proceedings against Plaintiff without probable cause and with malice," and that the "proceedings were ultimately terminated in the Plaintiff's favor." (*Id.*) Plaintiff alleges he would not have been denied bond or received an active prison sentence "if not for the Trafficking charge that was subsequently dismissed due to the malfeasance of the Defendants in this action." (*Id.*) Plaintiff further alleges that he "would have received a suspended sentence on the heroin charges" if not "for the unlawful actions of the Defendants . . . because the Plaintiff had no prior record at the time of his sentencing." (*Id.*)

Plaintiff maintains his "active prison sentence and wrongful imprisonment directly resulted from" Defendants' actions and violated his Fourth Amendment right to be free from unreasonable seizure. (*Id.*) According to Plaintiff, "Defendants' conduct violated 42 U.S.C. § 1983, and Plaintiff is entitled to judgment against them." (*Id.* at 8.) Plaintiff alleges he has "suffered physical,

3

emotional and mental harm as well as the violation of his well-established constitutional rights and is entitled to recover from Defendants nominal, actual, and punitive damages." (*Id*.) The Complaint alleges causes of action for: (1) "Violation of *Brady* Due Process Rights"; (2) Malicious Prosecution; (3) False Imprisonment; and (4) "Negligence/Gross Negligence." (*Id.* at 9–11.)

On August 12, 2025, Defendants filed a Motion to Dismiss. (Dkt. No. 6.) Plaintiff filed a response in opposition on September 22, 2025[1] (Dkt. No. 12), and Defendants filed a reply brief (Dkt. No. 13). The Motion to Dismiss is ready for the Court's review.

**B.     Prior State Court Case**

The undersigned takes judicial notice of Plaintiff's prior state court case. *See* Berkeley County Public Index, https://publicindex.sccourts.org/berkeley/publicindex/ (last visited Oct. 15, 2025); *see also Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (explaining that a federal court may take judicial notice of the contents of its own records, as well as those records of other courts); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Tisdale v. South Carolina Highway Patrol*, No. 0:09-cv-1009-HFF-PJG, 2009 WL 1491409, at *1 n.1 (D.S.C. May 27, 2009), *aff'd,* 347 F. App'x 965 (4th Cir. Aug. 27, 2009) (noting that the court may also take judicial notice of factual information located in postings on government web sites).

More specifically, on August 22, 2023, Plaintiff filed a Summons and Complaint for a civil lawsuit in the Berkely County Common Pleas against Berkeley County, Berkeley County Sheriff's Office, Scott W. Lockwood, Bernard W. Nelson, Jr., and Hershul Tanner ("*Hearne I*"). Plaintiff's Complaint in *Hearne I* is premised on his same May 17, 2019 arrest and the events that followed, and it alleges causes of action for: (1) Malicious Prosecution; (2) "Violation of *Brady* Due Process

---

[1] The Court allowed Plaintiff to file an untimely response in opposition pursuant to Fed. R. Civ. P. 6(b). (Dkt. Nos. 8; 11.)

Rights"; and (3) "Negligence/Gross Negligence." (Dkt. No. 13-1.) On October 15, 2024, the Berkeley County Clerk of Court filed a Dormant File Notice due to "No Proof of Service" and requested dismissal of the action. On November 18, 2024, the action was dismissed by Court Order for lack of prosecution. Plaintiff filed the instant action in federal court on April 23, 2025.

## **STANDARD**

On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

"[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). As a result, district courts may only resolve a statute of limitations defense at the motion to dismiss stage if "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Id.* (quoting *Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

## DISCUSSION

In their Motion to Dismiss, Defendants argue that dismissal is appropriate because: (1) this action is barred by the doctrine of *res judicata*, based on the dismissal of *Hearne I* in state court; and (2) Plaintiff's claims are barred by the applicable statute of limitations. (Dkt. No. 6.)

The undersigned considers these arguments, below.

**A.     Res Judicata**

In their Motion, Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata*, based on the dismissal of *Hearne I* in state court. (Dkt. No. 6 at 7.) "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). South Carolina law applies in determining whether this action is barred by the earlier state action. *See Timpson v. Pondexter*, No. 5:17-cv-00760-PMD-KDW, 2017 WL 6280871, at *2 (D.S.C. Nov. 15, 2017) ("Because Defendants' *res judicata* defense is based is a South Carolina state court judgment [sic],

6

South Carolina law relative to *res judicata* is cited."), *adopted by*, 2017 WL 6270604 (D.S.C. Dec. 7, 2017); *Weston v. Margaret J. Weston Med. Ctr.*, 2007 WL 2750216, at *1 (D.S.C. 2007).

"To establish the defense of *res judicata* three elements must be shown: (1) identity of the parties or their privies; (2) identity of the subject matter of the litigation; and (3) a final determination on the merits of the claim in the former proceeding." *H.G. Hall Constr. Co. v. J.E.P. Enters.*, 321 S.E.2d 267, 271 (S.C. Ct. App. 1984). South Carolina courts hold that the doctrine of *res judicata* applies to issues adjudicated in the prior suit and issues which could have been raised. *Hilton Head Center of S.C. v. Public Service Comm'n*, 362 S.E.2d 176, 177 (S.C. 1987). Privity "means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding." *Richburg v. Baughman*, 351 S.E.2d 164, 166 (S.C. 1986). Claims are based on the same cause of action if they "arise[ ] out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Laurel Sand & Gravel. Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (internal citations and quotations omitted). "*Res judicata* . . . bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Riedman Corp. v. Greenville Steel Structures, Inc.*, 419 S.E.2d 217, 218 (S.C. 1992).

The Fourth Circuit Court of Appeals has held that "[g]enerally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions . . . or the same core of operative facts." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996) (internal citations omitted). By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[*r*]*es judicata* ... encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Pueschel v.*

*United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

Here, the parties agree that a final judgment was reached on the merits in *Hearne I*. (Dkt. Nos. 6 at 7; 12 at 8.) Plaintiff contends, however, that his claims in the instant action and in *Hearne I* do not "arise out of the same transactions or the same core of operative facts." (Dkt. No. 12 at 9.) Plaintiff further argues that there is not a complete identity of the parties because "while the remaining parties are the same, the Doe placeholder defendants remain to be named and have yet to be identified as discovery in this case has yet to commence." (*Id*.) The undersigned considers these arguments in turn.

First, Plaintiff argues that he "brought the original state court action pursuant to the South Carolina Tort Claims Act," and his "state case did not encompass nearly all the facts giving rise to Plaintiff's § 1983 claims raised in this case." (*Id*.) Plaintiff maintains his "false imprisonment cause of action, and the facts regarding the nature and basis of Plaintiff's ongoing incarceration and deprivation of liberties, were not raised in the state court case." (*Id*.) Defendants dispute Plaintiff's characterization of his state court claims, noting that the complaint in *Hearne I* expressly alleged "[t]his action is brought pursuant to the South Carolina Tort Claims Act, pursuant to 42 U.S.C. § 1983, et seq., and pursuant to all other applicable law." (Dkt. No. 13 at 5 (citing Dkt. No. 13-1 at 4).) Defendants argue any such distinction is meaningless to the *res judicata* analysis, regardless, because Plaintiff could have alleged the § 1983 claims in state court. Defendants further argue that the grounds for Plaintiff's current causes of action, including false imprisonment, "were all available to him in his previously dismissed State Court lawsuit." (*Id*. at 6–7.)

Upon review, the undersigned finds that pleadings in *Hearne I* and the instant action differ mainly as to the false imprisonment claim. As Plaintiff contends, he did not allege a claim for false

imprisonment in *Hearne I*, and the Complaint in the instant action includes allegations supporting that claim that are absent in *Hearne I*. However, it is clear that all of the claims in the instant action are based on the same underlying transactions as those involved in *Hearne I*, namely, Plaintiff's May 17, 2019 arrest and his related prosecution. Because these claims all could have been brought in *Hearne I*, including those under § 1983, this element of the *res judicata* defense is satisfied.[2] *See*, *e.g.*, *Timpson*, 2017 WL 6280871, at *3 ("[T]he United States Supreme Court and other courts have specifically held that the doctrine of *res judicata* applies to situations where state-law-based claims were originally brought and then, later, § 1983 claims were raised in federal court based on the same transactions as those involved in the original state claims. . . . [I]t is clear that Plaintiff could have raised his § 1983 claims in his state-court action because there is concurrent jurisdiction for such claims in both state and federal court."); *Briggs v. Newberry Cnty. Sch. Dist.*, 838 F. Supp. 232, 235 (D.S.C. 1992) ("Under the principles of claim preclusion, a final judgment on the merits in a prior action will absolutely bar the parties and their privies from litigating in a subsequent action issues actually litigated and issues that could have been raised in the first action.") (citing *Jaynes v. County of Fairfield*, 401 S.E.2d 183 (S.C. Ct. App. 1991) and *Calvert v. Calvert*, 336 S.E.2d 884 (S.C. Ct. App. 1985)).

Finally, while it is undisputed that the *identified* Defendants are the same in both actions, the question here is whether Plaintiff can avoid the preclusive effect of *Hearne I* by naming as Defendants, "Does 1-5 inclusive." As noted above, privity "means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding." *Richburg*, 351 S.E.2d at 166.

---

[2] Even crediting Plaintiff's argument that the false imprisonment claim and those supporting allegations do not arise from the same transaction, this claim is nevertheless barred under the applicable statute of limitations. *See infra* section B.

> Relevant here, the Complaint alleges that
>
> > Plaintiff is unaware of the true names, identities, and/or capacities of Defendants sued herein as Does 1-5, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend the Complaint to allege the true names and capacities when ascertained. Plaintiff believes and alleges that each of the Doe Defendants is legally responsible and liable for the incident, injuries, and damages hereinafter set forth.

(Dkt. No. 1 at 3.) In his briefing, Plaintiff offers only two sentences in support of this issue, stating:

> In the instant action Plaintiff identified the need to name additional Doe defendants potentially liable to him for the claims raised in his lawsuit but unknown to him at the time of filing the state court case. While Plaintiff concedes that the remaining parties are the same, the Doe placeholder defendants remain to be named and have yet to be identified as discovery in this case has yet to commence.

(Dkt. No. 12 at 9.)

Upon review, the undersigned recommends the inclusion of the "Doe placeholder defendants" should not preclude dismissal of this action under *res judicata*, given the particular circumstances of this case. As an initial matter, "[d]efendants who are members of the same government agency are generally treated as being in privity for purposes of being able to assert a *res judicata* defense." *Timpson*, 2017 WL 6280871, at *3 (collecting cases); *see also Moore v. Byars*, C/A No. 4:13-cv-2454-RMG, 2013 WL 6710273, at *4 (D.S.C. Dec.18, 2013) ("The current Defendants, both SCDC officials/employees with authority over prisoners' records, are in privity with the Defendants in the previous act: 'John Doe, unknown employee of the South Carolina Department of Corrections,' who was presumed to have authority over Plaintiff's inmate records."); *Wiles v. Ozmint*, No. 9:09-cv-634-CMC-BM, 2009 WL 3417580, *4 (D.S.C. Oct. 20, 2009) ("Additionally, two of the eight Defendants named in this case (Ozmint and Reynolds) are the same Defendants who were named in Plaintiff's previous lawsuit, and the remaining Defendants, who are all also employees of the Department of Corrections, qualify as privies."); *Mills v. Jail Adm'r, Lexington Cnty. Det. Ctr.*, No. 6:07-cv-1695-HFF-WMC, 2008 WL 1883387,

at * 3 (D.S.C. Apr. 25, 2008) (finding privity where the plaintiff named the Lexington County Detention Center ("LCDC") and employees of the LCDC as defendants, and in the subsequent action he named the LCDC's Administrator and the Sheriff as defendants). Accordingly, if the Doe defendants are identified eventually as current or former employees of the BCSO, their interests would have been represented by the named Defendants in *Hearne I*, such that privity would apply. And Plaintiff offers no argument, and the allegations in the Complaint do not otherwise indicate, that the Doe defendants will be individuals other than those employed by the BCSO.

Based on the foregoing, the undersigned recommends that the instant action is barred by the doctrine of *res judicata*. In an abundance of caution, the undersigned considers Defendants' additional argument for dismissal.

B.     **Statute of Limitations**

Defendants also argue that Plaintiff's claims are barred by the applicable statute of limitations. (Dkt. No. 6 at 5–7.) Here, the parties agree that Plaintiff brings his causes of action under § 1983. The applicable statute of limitations for a § 1983 claim arising in South Carolina is three years.[3] *See Owens v. Okure*, 488 U.S. 235 (1989); *Owens v. Baltimore City State's Attorney Office*, 767 F.3d 379, 388 (4th Cir. 2014) ("[T]o determine the timely filing of a § 1983 claim, courts borrow the statute of limitations from the most analogous state-law cause of action. For

---

[3] In their Motion, Defendants assert that the South Carolina Tort Claims Act ("SCTCA") is the most analogous state-law cause of action because it is the exclusive remedy for individuals suing government employees acting within the scope of their employment. (Dkt. No. 6 at 5); *see* S.C. Code Ann. § 15-78-70(a). The statute of limitation for any action brought under the SCTCA is two years after the date the loss was or should have been discovered. § 15-78-110. However, Defendants fail to acknowledge that "to the extent an individual is sued in their individual capacity (such as in this case), government employees are immune from suit under the SCTCA unless they (1) acted outside the scope of employment; or (2) committed actual fraud or acted with actual malice, intent to harm, or committed a crime involving moral turpitude." *Sanders v. Downing*, No. 2:23-cv-06823-RMG-MHC, 2024 WL 4958215, at *3 (D.S.C. Oct. 10, 2024), *adopted by*, 2024 WL 4678378 (D.S.C. Nov. 5, 2024). Because Defendants do not acknowledge this exception, and because the statute of limitations is an affirmative defense, the undersigned considers the three-year statute of limitations as applicable to Plaintiff's § 1983 claims. *See Brannon v. Blanton*, No. 9:15-cv-2434-CMC, 2016 WL 4232886, at *2 (D.S.C. Aug. 11, 2016) ("[T]he statute of limitations for § 1983 claims arising in South Carolina is three years, regardless of the underlying allegations of the § 1983 claim.").

11

§ 1983 suits, that cause of action is a personal-injury suit.") (internal citations omitted); *see also S.C. Code Ann*. § 15-3-530(5). A § 1983 cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. *Nasim v. Warden, Md. House of Corr*., 64 F.3d 951, 955 (4th Cir. 1995); *see also Wallace v. Kato*, 549 U.S. 384 (2007) (providing that the accrual date of a § 1983 cause of action is a question of federal law).

As noted above, Plaintiff alleges causes of action for: (1) Violation of a Brady Due Process Rights; (2) Malicious Prosecution; (3) False Imprisonment; and (4) Negligence/Gross Negligence. (Dkt. No. 1 at 9–11.) In her response brief, Plaintiff argues that "the tort of malicious prosecution provides the closest analogy to Plaintiff's § 1983 claims because he alleges "Defendants violated his due process rights by maintaining proceedings against him without disclosing exculpatory evidence." (*Id*. at 5.) The allegations underlying the causes of action for the *Brady* violation and malicious prosecution indeed are analogous and precedent holds that the statute of limitations begins to run for these claims only when the prosecution ends—in this case when a *nolle prosequi* was entered on December 21, 2022. *See McDonough v. Smith,* 588 U.S. 109, 116 (2019 (a malicious prosecution claim "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor"); *Owens*, 767 F.3d at 390 (finding "[t]he tort of malicious prosecution . . . provides the closest analogy to [plaintiff's] *Brady*-like claim" and "the operative limitations period began to run on the date a malicious prosecution claim became ripe at common law, i.e., the date on which the *nolle prosequi* was entered"). Because Plaintiff filed the instant action on April 23, 2025, his § 1983 claims for the *Brady* violation and malicious prosecution were timely filed.

Turning to Plaintiff's "negligence/gross negligence" claim, the parties agree that the allegations underlying this claim are brought under § 1983. Under this cause of action, the

Complaint alleges, *inter alia*, that "Defendants' failure to properly train law enforcement officers manifested deliberate indifference leading to [a] pattern of unconstitutional conduct by inadequately trained and supervised employees." (Dkt. No. 1 at 11.) Based on this allegation and the parties' apparent agreement that a § 1983 claim is alleged here, the undersigned considers this cause of action as a § 1983 claim for failure to train. Defendants offer no compelling case law indicating that, where malicious prosecution is alleged, the statute of limitations on a related failure to train claim accrues before the underlying prosecution ends. Because Defendants have not pointed to facts in the Complaint that establish conclusively that this § 1983 claim is barred by the statute of limitations, the undersigned recommends the Plaintiff's "negligence/gross negligence" claim should not be dismissed on this basis. *See Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 456 (D. Md. 2014) ("The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred.").

Finally, for false imprisonment claims, the limitations period begins to run "when the alleged false imprisonment ends," and "a false imprisonment ends once the victim becomes held pursuant to . . . [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. 389–90 ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process . . . . Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.") (internal citations omitted). Here, the Complaint alleges Plaintiff pled guilty to the three charges on May 20, 2021, and he was sentenced at that time. (Dkt. No. 1 at 5.) Because more than three years passed before Plaintiff

13

filed the instant action, his § 1983 false imprisonment claim is barred by the applicable statute of limitations, and it should be dismissed on this basis.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that Defendants' Motion to Dismiss (Dkt. No. 6) be GRANTED on the basis that the instant action is barred by the doctrine of *res judicata*.

Alternatively, if the District Judge disagrees with that recommendation, then it is RECOMMENDED that Plaintiff's § 1983 false imprisonment claim should be dismissed as barred under the applicable statute of limitations, and Plaintiff's remaining claims should proceed.

IT IS SO RECOMMENDED.

October 21, 2025

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).